# Richmond.

## INGE AND OTHERS V. INGE AND OTHERS.

### January 11, 1917.

1. REFORMATION OF INSTRUMENTS—*Mistake.*—A suit in equity was brought to correct an alleged mistake whereby, in the deeds carrying out a certain partition agreement, a tract of land was conveyed to a daughter instead of to her mother. The evidence showed that the three parties concerned in the partition, the mother and her two children, deliberately and understandingly intended to divide the real estate, the property of their deceased husband and father, in such a way that the mother would receive a conveyance in fee simple for the tract of land in question, and that it was conveyed to her daughter by mistake. This being true, it is unnecessary to speculate in regard to the reasons which may have led the two children to agree upon a partition which apparently gave their mother a higher and more valuable estate than her dower interest would have entitled her to receive. The natural presumption that in such a partition the widow would get no land in fee simple must, of course, yield to affirmative proof to the contrary. In the case at bar there is such proof, it is clear and convincing; and the deed must be reformed accordingly.

2. REFORMATION OF INSTRUMENTS—*Mistake—Laches—Burden of Proof.*—In a suit to reform a deed for mistake, where the defendant admits the mistake, the burden of proof of showing laches, acquiescence or ratification, by which complainant had lost her right to equitable relief, is upon defendant, and in carrying this burden defendant must do more than merely prove ambiguous and equivocal conduct and statements on the part of the complainant.

3. REFORMATION OF INSTRUMENTS—*Mistake—Estoppel.*—In this case it appeared that defendant had given a deed of trust on the tract of land after complainant had declined an offer of recomveyance. It was contended that thereby defendant had been placed in a worse position than she would have otherwise occupied, and that therefore the complainant was estopped from asserting her right to the land. It appeared that the money secured by this deed of trust was borrowed for a third party, and that defendant was secured collaterally, and was besides able to pay off the debt.

*Held:* That complainant was not estopped.

42

4. REFORMATION OF INSTRUMENTS—*Mistake—Laches—Insanity.*— Scarcely a year elapsed after complainant learned of the mistake until she became ill and mentally incompetent to protect her interests, and remained so practically all the time until shortly before this suit was brought.

   *Held:* To preclude the doctrine of laches.

5. LACHES.—Whenever the delay fairly justifies the inference of acquiescence in the adverse claim, or whenever it has been of such a character as to induce other persons to alter their circumstances or conduct, so that the element of estoppel is introduced, a court of equity will commonly hold the delay to operate as an absolute bar.

6. MORTGAGES AND DEEDS OF TRUST—*Insanity.*—Where it is shown that the grantor was generally insane during a certain period, and a lucid interval is claimed at a particular time during that period, the burden of proof is on the party alleging such lucid interval to show sanity at that particular time.

7. MORTGAGES AND DEEDS OF TRUST—*Trustee.*—Where a married woman makes a deed of trust conveying her property in trust for her support, and selects a competent and trustworthy man as trustee, her selection will not be disturbed, although her husband and daughter would prefer a member of the family as trustee who would act without compensation.

Appeal from a decree of the Circuit Court of Sussex county. Decree for the complainant. Defendant appeals.

*Affirmed.*

The opinion states the case.

*W. S. McNeill* and *T. Freeman Epes,* for the appellants

*Thomas H. Howerton* and *R. H. Mann,* for the appellees.

KELLY, J., delivered the opinion of the court.

This was a suit in equity brought by Helen N. Inge against her husband, S. T. Inge, and her daughter, S. H. Inge, the main objects of the suit being to set aside a deed

of trust which she had executed to her husband, and to correct an alleged mistake whereby, in the deeds carrying out a certain partition agreement, a tract of land known as the "Cox place" was conveyed to her daughter when it should have been conveyed to herself.

The complainant, Mrs. Helen N. Inge, was twice married. Her first husband, B. R. Birdsong, died intestate in the year 1908, leaving by that marriage a son, J. L. Birdsong, and a daughter, Sallie H. Birdsong, and leaving also a considerable estate. Shortly after the death of her first husband, she and her son and daughter, acting under the advice of relations, agreed upon a partition of the real estate. The method by which this partition was accomplished is thus stated by the witness, F. L. Birdsong, a brother of her first husband: "After they had agreed to divide the land as we had recommended, or suggested, I got the deeds (meaning the original deeds to B. R. Birdsong), put them in three parcels or bundles, and labeled one bundle to Helen N. Birdsong, one for J. L. Birdsong, and one for Sallie H. Birdsong, and wrapped a piece of paper around them and labelled them, brought them to Judge Arnold and instructed him to write deeds deeding to each one the respective bundles as handed him." It further appears that the original deed for the Cox place was in Helen N. Birdsong's bundle, and that by mistake the draftsman of the partition deeds included it in the conveyance to Sallie H. Birdsong.

Very soon after this partition was made, during the year 1909, and in the order now to be named, J. L. Birdsong married Miss Inge, a daughter of S. T. Inge, who was then a widower, Sallie H. Birdsong married J. T. Inge, his son, and the widow, Helen N. Birdsong, married the widower, S. T. Inge.

On the 11th of March, 1913, Helen N. Inge executed and delivered to her husband a deed conveying to him her property, with very full powers of management and disposition,

but in trust for certain purposes therein named, the chief of which were his and her support. From the date of her marriage until September, 1914, she resided with her husband in Lunenburg county, and then left him and went to the home of her brother at Waverly, in Sussex county, where she has since made her home. Soon after going there, she instituted this suit.

On the 25th of September, 1914, S. T. Inge, in his own right and as trustee, executed a deed releasing and reconveying to his wife the same property which she had conveyed to him, except such as he had in the meantime disposed of as trustee. There is some question as to whether this release deed was ever legally delivered. It was, however, turned over to her counsel and was admitted to record on November 30, 1914, along with a new trust deed, dated November 18, 1914, from Helen N. Inge to C. E. Smith, trustee. The new deed of trust conveyed to Smith, trustee, the property embraced in the release deed. The powers of the trustee under this second deed of trust were more restricted and the control of Mrs. Inge over the property better provided for than in the one previously executed to her husband.

Both the release deed and the second deed of trust were executed after the bill of complaint in this case was filed, but before appearance by the defendants; and both were assailed in a cross-bill subsequently filed by S. T. Inge.

The cause was duly matured and heard upon the pleadings and upon a volume of testimony (the further details of which, so far as essential, will hereafter appear) ; and the circuit court held that Helen N. Inge was insane and mentally incompetent to make the deed of March 11, 1913, to her husband; that the release deed was valid and binding; that on November 18, 1914, when Mrs. Inge executed the deed of trust to C. E. Smith, she was of sound mind; and that the Cox place had been allotted to her, and, by mistake,

had been included in the deed to her daughter, Sallie H. Inge. A decree was entered accordingly whereby the first deed of trust was set aside, the release deed and the second deed of trust were declared valid and binding, and Sallie H. Inge and her husband were directed to convey the Cox place to C. E. Smith, trustee, to be held by him subject to the terms of the deed of trust under which he held the residue of the complainant's property. There were other and subordinate provisions of the decrees appealed from which need not be here recited.

This brings us to a consideration of the assignments of error, the first of which calls in question the action of the circuit court in regard to the Cox place.

The evidence fully satisfies us that the three parties concerned in the partition, Mrs. Birdsong and her two children, deliberately and understandingly intended to divide the real estate in such a way as that Mrs. Birdsong would receive a conveyance in fee simple for the Cox place, and that it was conveyed to her daughter by mistake. This being true it is unnecessary to speculate in regard to the reasons which may have led the two children to agree upon a partition which apparently gave their mother a higher and more valuable estate than her dower interest would have entitled her to receive. The natural presumption that in such a partition the widow would get no land in fee simple must of course yield to affirmative proof to the contrary. In this case there is such proof, and it is clear and convincing.

But it is urged that, if there was a mistake in regard to the Cox place, which would ordinarily be relievable in equity, the complainant has lost her right to such relief, by laches, acquiescence, ratification and conduct on her part working an equitable estoppel. These several alleged bars to her suit are urged with much earnestness by counsel for the appellants, but we are of opinion that the evidence is not sufficient to sustain either of them.

The complainant learned of the mistake shortly after the partition deeds were made. A few months later she married Mr. Inge. Very soon thereafter, her daughter, Mrs. S. H. Inge, offered to reconvey the Cox place to her mother, and the latter declined to have her do so, telling her to let it stay "just like it is." As to these facts there is no dispute; but the elder Mrs. Inge states emphatically and repeatedly that she did not accept the reconveyance because she did not wish her husband to have the property and so informed her daughter, Mrs. S. H. Inge. The clear result of her testimony is that she regarded the property as her own, expected to continue to receive the rents and profits, and that while she probably intended to allow it to remain in her daughter's name and finally to become hers, she made no agreement to that effect and did not intend to surrender her control over it, or her right to demand a deed, if she so desired, during her lifetime. The testimony of the daughter and of the son, J. L. Birdsong, is apparently in some particulars in conflict with her testimony as to her purpose and intention in declining the reconveyance; but the conflict is more apparent than real, when it is remembered that she practically admits the statements which they ascribe to her, and that she differs from them chiefly as to what she meant. The explanation which she gives is not inconsistent with the language she used, and Mrs. S. H. Inge, who admits the mistake, has the burden of proving the acquiescence, ratification and estoppel upon which she relies. In carrying this burden, she must do more than merely to prove ambiguous and equivocal conduct and statements on the part of her mother. (*Baugh & Sons' Co.* v. *Black, ante* p. 12, 93 S. E. 607; 10 R. C. L., sec. 150, p. 845.) And it is to be observed that Mrs. S. H. Inge nowhere in her testimony denies that her mother said exactly what she claims to have said in explanation of her refusal to accept a reconveyance. One statement in the testimony of J. L. Birdsong is susceptible of an interpretation which

would mean that he heard his mother say she did not want a deed for the Cox place because she wanted her daughter to have it. It is not clear whether this statement was intended to express the opinion of the witness or to quote the language of his mother. In either event, he was speaking of only one conversation and the elder Mrs. Inge is not contradicted by any witness in her statement that she told her daughter many times that she did not want the reconveyance because she did not want her husband to get the property. This may not have been a very logical reason to assign, but it is consistent with her claim to the ownership of the property.

It appears that Mrs. S. H. Inge and her husband have given a deed of trust on the Cox place since Mrs. Helen Inge declined the offer of reconveyance, and it is insisted that this has placed the daughter in a worse position than she would otherwise have occupied and that, therefore, the mother is now estopped from asserting her right to the land. This contention is without merit. If it be conceded that her mother said enough to lead Mrs. S. H. Inge to think she had a right to encumber the land, the evidence is clear that she was not in fact influenced or injured thereby in the least, for she states that she did not even know the deed she had signed was a deed of trust on the Cox place. In a letter to her mother, written after the suit was brought and after her attention had been called to the fact that she had united with her husband in a deed of trust on the Cox place, she expressly states that the money secured thereon was borrowed for a third party, that she and her husband are secured collaterally for the amount, and, besides, that they are able to pay off "this deed of trust and several more like it at any time." It is perfectly apparent that the deed of trust has in no way inconvenienced or embarrassed her.

Upon the question of laches, it is only necessary to say, in addition to what has already been said, that scarcely a

year elapsed after Mrs. Helen Inge learned of the mistake until she became ill and mentally incompetent to protect her interests, and remained so practically all the time until shortly before this suit was brought. This is clear from the testimony of the appellees themselves.

"From the nature of the case, no rigid rule can be laid down as to what delay will constitute laches; every suit must depend upon its own circumstances. But whenever the delay fairly justifies the inference of acquiescence in the adverse claim, or whenever it has been of such a character as to induce other persons to alter their circumstances or conduct, so that the element of estoppel is introduced, a court of equity will commonly hold the delay to operate as an absolute bar." Merwin's Equity & Equity Pl., sec. 908.

It is clear from this general statement of the law on the subject, viewed in the light of the foregoing review of the evidence, that the complainant's case is not, in any aspect, affected by the doctrine of laches.

Passing now to the alleged error of the circuit court in finding that the complainant was insane on March 11, 1913, we are of opinion that the evidence abundantly supports this conclusion. The appellants say, in their petition for appeal, "the evidence is overwhelming that, with the exception of occasional intervals, the complainant was generally insane from 1910 to September, 1914;" and, this being true, it follows that the burden of proving a lucid interval on March 11, 1913, rested upon the appellants.

In the case of *Fishburne* v. *Ferguson,* 84 Va. 87, 107, 4 S. E. 575, 580, Judge Lewis, delivering the opinion of this court, said, "although derangement when alleged must be proved, yet if a state of general derangement be once established, and a lucid interval is claimed to have afterwards prevailed at a particular period, then the burden of proof is upon the party alleging such lucid interval to show

sanity and competence at the period the act was done, and to which the lucid interval refers."

The burden thus cast upon the appellants was not sustained. The husband, S. T. Inge, does testify that she was as nearly normal on March 11, 1913, as he ever saw her; but he also says that the disease, pellagra, which attacked her in 1910, "crazed her," made her "the wildest woman he ever saw," and that she did not recover her mental faculties while they continued to live together. The other evidence relied upon as tending to show her sanity when the deed was made is negligible, and the circuit court rightly found that she was not competent to make the deed to her husband.

Having reached this conclusion, it is unnecessary to consider the next assignment of error, which assails the action of the court in finding that the deed of release and reconveyance from S. T. Inge to his wife was duly delivered and, therefore, valid and binding. The original deed being void, the release is immaterial.

The only other question requiring our consideration is whether the court erred in holding that on November 18, 1914, when Mrs. Inge executed the deed of trust to C. E. Smith, she was mentally competent to do so. This court is of opinion that the finding of the circuit court on this question was right, and the necessary result is that all the remaining questions raised by the appellants are without merit and require no further discussion.

The testimony of members of complainant's family tends to show that she was improving in 1914, prior to the date on which she left her husband and went to the home of her brother. The physicians who examined her after she came to Waverly considered her competent to transact business and so testified. Her own testimony, given in this suit some time after she had made the deed to Smith, while indicating some eccentricity, tends strongly to show that she fully understood the transaction.

Aside, perhaps, from the question as to Cox place, the real controversy here is as to the person who shall act as trustee. All parties concede that it is best for Mrs. Inge to have her estate in the hands of a trustee; her husband insists that he is glad to be relieved of the trust; and she herself has selected a man who is shown to be competent and trustworthy. The appellants object to her selection and prefer some member of her family, one or more of whom would be willing to act, and, unlike Mr. Smith, to do so without compensation. This is a natural preference on their part, and it seems unfortunate that Mrs. Inge does not take the same view of the matter, but in declining to conform to their wish in this respect she is certainly within her legal rights.

There is no error in the decrees complained of, and they are affirmed.

*Affirmed.*